USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/8/1[?]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

RAFAEL PEREZ,

          Plaintiff,

v.

SUPERINTENDENT LILLY, DR. MAKRAM,
MS. SHARPE, NURSE BAUMGARTEN, and
DR. CARL J. KOENIGSMANN (individually
and in their official capacities),

          Defendants.

-------------------------------------------------------------x

**OPINION AND ORDER**

17 CV 4222 (VB)

Copies Mailed/Faxed 8-8-1[?]
Chambers of Vincent L. Briccetti

Briccetti, J.:

    Plaintiff Rafael Perez, proceeding pro se and in forma pauperis, brings this action under

42 U.S.C. § 1983 against defendants in their individual and official capacities, alleging all

defendants were deliberately indifferent to his medical needs and defendants Superintendent

("Supt.") Lilly and Ms. Sharpe interfered with his access to the courts.

    Now pending is defendants' motion to dismiss the amended complaint pursuant to Rule

12(b)(6).  (Doc. #43).

    For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN

PART.

    The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

    For the purpose of deciding the pending motion, the Court accepts as true all well-

pleaded factual allegations in the amended complaint and draws all reasonable inferences in

plaintiff's favor, as set forth below.

    In 2012, plaintiff fractured his left foot in a motorcycle accident.  Plaintiff was unable to

seek medical treatment, because he did not have medical insurance and could not pay for medical

care. The injury healed on its own, but in 2014 plaintiff began experiencing severe pain, which made it difficult to walk.

Around this time, plaintiff was approved for Medicaid and saw two non-party physicians. The first physician allegedly told plaintiff he "need[ed] surgery to reconstruct the foot because the bone had badly healed." (Am. Compl. at IX ¶ 6). The physician also prescribed plaintiff Xanax and a medication called "Liticus," both of which helped reduce plaintiff's pain. (Id. ¶ 7). The second physician, a bone specialist, agreed plaintiff needed surgery because the bone healed incorrectly.

Plaintiff agreed to have surgery and was prescribed medical shoes for the intervening time.

But in 2015, plaintiff was arrested and confined in Oneida County Jail before surgery could be performed. Instead of Liticus and Xanax, plaintiff was given ibuprofen for pain relief. He also was issued medical sneakers and participated in physical therapy.

After his criminal proceedings, plaintiff was transferred to the custody of New York State Department of Corrections and Community Supervision ("DOCCS"), initially at Elmira Correctional Facility ("Elmira"). According to the inmate lookup service on the official DOCCS website, of which the Court may take judicial notice, see Jackson v. Sullivan Cty., 2018 WL 1582506, at *5 n.8 (S.D.N.Y. Mar. 27, 2018),[1] plaintiff entered DOCCS custody on January 14, 2016.

Plaintiff informed the medical staff at Elmira of his injury, but he was told to address the issue with his next facility because he was assigned to Elmira temporarily.

---

[1]     Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this ruling. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Soon after, plaintiff was transferred to Collins Correctional Facility ("Collins"). Collins's medical staff allegedly determined plaintiff needed surgery, and told plaintiff they would place a recommendation for surgery in his file. Plaintiff remained on ibuprofen for pain relief.

Two months later, in May 2016, plaintiff was transferred to Woodbourne Correctional Facility ("Woodbourne"). Plaintiff again informed medical staff of his injury, ongoing pain, and difficulty walking. Plaintiff fell twice because his left leg "gave out on him," and fractured his right wrist in one fall. (Am. Compl. at IX ¶ 20).

On July 6 and July 14, 2016, plaintiff's left foot was x-rayed. Also in July 2016, plaintiff was seen by a medical specialist at Sullivan Correctional Facility. The medical specialist informed plaintiff he had two choices: (i) "[p]laintiff could receive a cortizone [sic] shot for the pain or [ii] [c]onsent to a surgery, in which they would reconstruct the foot." (Am. Compl. at IX ¶ 22) (emphasis added). Plaintiff consented to the surgery and "was informed that a recommendation for surgery would be placed in his medical file and would be reviewed and decided on by Albany for approval." (Id. ¶ 23).

By around this time, having taken ibuprofen for approximately a year, plaintiff allegedly began to experience severe stomach pains. Plaintiff submitted a sick-call request and was seen by defendant Nurse Baumgarten. Plaintiff claims Nurse Baumgarten informed him that "Ibuprofen was the only pain medication . . . being administered due to inmates abusing other effective medications." (Am. Compl. at IX ¶ 25). Nurse Baumgarten also allegedly told plaintiff "DOCCS had denied his recommendation for surgery because . . . plaintiff refused to consent to a cortizone [sic] shot." (Id. ¶ 26).

On December 8, 2016, an employee of DOCCS's Division of Health Services told plaintiff there was no recommendation for surgery.

On December 29, 2016, defendant Dr. Carl J. Koenigsmann told plaintiff the Division of Health Services had investigated plaintiff's medical concerns and "plaintiff was scheduled for an evaluation of his foot with a prescription footwear provider and that there was no medical indication for surgery." (Am. Compl. at IX ¶ 28).

Plaintiff filed a grievance on January 4, 2017. The grievance was rejected on or about January 10, 2017, as non-grievable. The decision was unsigned. Moreover, when Sharpe delivered the decision to plaintiff, she also accidentally delivered Supt. Lilly's decision rejecting plaintiff's appeal—even though plaintiff had not yet appealed the decision.

Plaintiff sent a letter to Supt. Lilly on February 12, 2017, and Supt. Lilly personally came to speak to plaintiff. Plaintiff showed Supt. Lilly a copy of the appeal rejection, which Supt. Lilly had "no knowledge of" even though he had signed it. (Am. Compl. at IX ¶ 32). Supt. Lilly told plaintiff he would speak to Sharpe about providing plaintiff with an appeal decision.

Supt. Lilly also allegedly told plaintiff he had to consent to a cortisone shot as a "first line of treatment" before getting surgery. (Am. Compl. at IX ¶ 34).

On March 23, 2017, plaintiff saw Dr. Carubia, a private orthopedic medical provider to whom DOCCS referred plaintiff. Dr. Carubia allegedly informed plaintiff "he could not make a recommendation for surgery, although it was clearly evident that the plaintiff would need surgery." (Am. Compl. at IX ¶ 37). Dr. Carubia told plaintiff he was restricted to determining whether plaintiff was eligible for medical footwear.

Plaintiff received prescription boots a couple of months later. However, according to plaintiff, no one followed up to see if the boots fit or if plaintiff required further medical attention.

On August 14, 2017, plaintiff complained that "his left ankle and foot [were] turning colors." (Am. Compl. at IX ¶ 40). Nurse Baumgarten told plaintiff defendant Dr. Makram would see him to address his concerns.

The next day, Nurse Baumgarten told plaintiff she had spoken to Dr. Makram, who said he would not see plaintiff. Nurse Baumgarten also told plaintiff he would be prescribed meloxicam instead of ibuprofen, and that he would need to get a cortisone shot "if he wanted medical treatment for his pain." (Am. Compl. at IX ¶¶ 41). In addition, Nurse Baumgarten told plaintiff he was experiencing pain because he had a bunion, and not because of the motorcycle accident injury.

Plaintiff asked about departmental policy regarding the need for cortisone shots, but told Nurse Baumgarten "he was not refusing the cortizone [sic] shot[,] because he did not want to make it seem [like] he was refusing medical treatment." (Am. Compl. at IX ¶ 44).

## DISCUSSION

I.     Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation and citation omitted). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II.    Official Capacity Claims

Plaintiff's claims for monetary damages against individual defendants acting in their official capacities are barred by the Eleventh Amendment. See Ying Jing Gan v. City of N.Y., 996 F.2d 522, 529 (2d Cir. 1993). Accordingly, all monetary damages claims against the individual defendants acting in their official capacities are dismissed.

III.    Deliberate Indifference

Defendants argue plaintiff fails to state a claim for deliberate indifference to plaintiff's serious medical needs.

The Court agrees as to plaintiff's pain medication and orthotic boots claims. The Court disagrees as to plaintiff's claim based on defendants' delaying surgery on his left foot.

Plaintiff asserts deliberate indifference claims against defendants under both the Eighth and Fourteenth Amendments. Because plaintiff was a post-conviction inmate when the events giving rise to his claim occurred, the Eighth Amendment standard applies. Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009), overruled on other grounds by Darnell v. Pineiro, 849 F.3d 17 (2d Cir. 2017).

To assert a claim for constitutionally inadequate medical care under the Eighth Amendment's ban against cruel and unusual punishment, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This test has both an objective and a subjective component: plaintiff must plead facts alleging (i) a "sufficiently serious" deprivation of medical care, and (ii) the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective component has two subparts. "The first inquiry is whether the prisoner was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is required. Salahuddin v. Goord, 467 F.3d at 279 (citing Farmer v. Brennan, 511 U.S. 825, 845–47 (1970)). "Second, the objective test asks whether the inadequacy in medical care is sufficiently serious" by examining "how the offending conduct is inadequate and what harm, if

any, the inadequacy has caused or will likely cause the prisoner." Id. at 280 (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)).

The subjective component requires a showing that defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm. Salahuddin v. Goord, 467 F.3d at 280. "[T]he charged official must act with a sufficiently culpable state of mind." Id. (citing Wilson v. Seiter, 501 U.S. 294, 300 (1991)). "To satisfy this prong of the deliberate indifference test, a plaintiff must allege only that the defendant was 'aware of facts' from which one could infer that 'a substantial risk of serious harm' existed, and that the defendant actually drew that inference." Dotson v. Fischer, 613 F. App'x 35, 38–39 (2d Cir. 2015) (summary order). However, it is well established that "negligence, even if it constitutes medical malpractice, does not, without more," give rise to a constitutional claim. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

A.    Pain Medication

Defendants argue plaintiff fails to state a claim for deliberate indifference for prescribing him ibuprofen.

The Court agrees.

"It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d at 698. Moreover, "[t]he decision to prescribe one form of pain medication in place of another does not constitute deliberate indifference to a prisoner's serious medical needs." Rush v. Fischer, 923 F. Supp. 2d 545, 555 (S.D.N.Y. 2013), aff'd sub nom. Rush v. Canfield, 649 F. App'x 70 (2d Cir. 2016) (summary order).

Here, plaintiff alleges he suffered stomach pains after taking ibuprofen for a year. Plaintiff further alleges Nurse Baumgarten refused to prescribe him alternate pain medication because other inmates had abused other medications, even though plaintiff had never done so. Plaintiff's allegations amount to a mere disagreement as to plaintiff's proper pain medication prescription.

Accordingly, plaintiff fails to state a claim for deliberate indifference for prescribing him ibuprofen.

B.   Surgery

Defendants argue plaintiff fails to state a claim for deliberate indifference based on delaying surgery on plaintiff's left foot.

The Court disagrees.

Plaintiff's allegations satisfy the objective prong. In cases challenging the adequacy of the medical treatment given, "the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" Salahuddin v. Goord, 467 F.3d at 280 (quoting Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003)) (alterations omitted)).

Plaintiff alleges the delay in performing surgery caused him severe pain, such that he had difficulty walking and once fell and fractured his wrist. Moreover, according to plaintiff, multiple physicians recommended surgery. Plaintiff alleges even Dr. Carubia, a private orthopedic medical provider to whom DOCCS referred plaintiff, said it was evident plaintiff needed surgery on his foot. Thus, plaintiff satisfies the objective prong.

Plaintiff's allegations also satisfy the subjective prong. A plaintiff may satisfy the subjective prong when defendants' actions in delaying surgery "for one year . . . result[s] in the continuation of severe symptoms." Dotson v. Fischer, 613 F. App'x at 38 (quoting Farmer v. Brennan, 511 U.S. at 837).

Plaintiff alleges defendants were aware of his injury, yet delayed surgery from when he entered DOCCS's custody on January 14, 2016, until at least August 14, 2017, over a year and a half later. Specifically, plaintiff alleges over the course of the year he was waiting for surgery, he met or spoke with Nurse Baumgarten, Dr. Koenigsmann, Lilly, and Sharpe, about his foot injury; plaintiff also alleges Dr. Makram was told of plaintiff's foot pain but refused to see him. Thus, plaintiff's allegations satisfy the subjective prong.

Defendants argue plaintiff refused a cortisone shot, which was required prior to having surgery. Plaintiff's allegations directly contradict this assertion. In any event, questions of fact may be addressed at summary judgment.

At this early stage of the case, and drawing all reasonable inferences in plaintiff's favor as it must, the Court concludes plaintiff has sufficiently alleged a deliberate indifference claim based on delaying surgery on his left foot.

C.    Orthotic Boots

Defendants argue plaintiff fails to state a claim for deliberate indifference based on defendants' failure to follow up with plaintiff regarding the fit of his prescription boots.

The Court agrees.

Plaintiff alleges he did not see any medical staff after he was issued orthotic boots, but this allegation is contradicted by plaintiff's additional allegations that he saw Nurse Baumgarten after he complained to medical staff about his foot pain.

Accordingly, plaintiff's deliberate indifference claim based on defendants' failure to follow up regarding his orthotic boots is dismissed.

IV.     Fourteenth Amendment

Plaintiff has not alleged any facts that would support claims against unidentified defendants for events occurring while plaintiff was a pre-trial detainee. Accordingly, to the extent plaintiff asserts such claims, they are dismissed.

Plaintiff also alleges Dr. Koenigsmann denied him equal protection under the law, but makes no factual allegations that can be construed as supporting an equal protection claim.

Accordingly, plaintiff's Fourteenth Amendment deliberate indifference and equal protection claims are dismissed.

V.     Denial of Access to the Courts

Defendants argue plaintiff fails to state a claim for violation of his First Amendment right to access the courts against Supt. Lilly and Ms. Sharpe.

The Court agrees.

To state a claim for denial of access to the courts, "a plaintiff must allege that the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (internal quotation omitted) (alterations in original). Notwithstanding the First Amendment's guarantee of the right to petition the government for redress, "inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under [Section] 1983." Cancel v. Goord, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001).

Any claim that plaintiff was deprived of his right to petition the government for redress is belied by the fact of his bringing this lawsuit. See Harris v. Westchester Cty. Dep't of

Corr., 2008 WL 953616, at *5 (S.D.N.Y. Apr. 3, 2008) ("[I]n the event that prison officials ignore a grievance that raises constitutional claims, the proper avenue to seek relief is the course taken by plaintiff here: directly petitioning the government for redress of his claims.").

Accordingly, plaintiff fails plausibly to allege a claim against Supt. Lilly and Ms. Sharpe for denial of access to the courts.

VI.    Qualified Immunity

Defendants argue they are entitled to qualified immunity.

The Court disagrees.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established;' and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (quoting Taravella v. Town of Wolcott, 599 F.3d 129, 133–34 (2d Cir. 2010)). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted." Hyman v. Abrams, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order).

Here, plaintiff has sufficiently alleged defendants violated his Eighth Amendment rights, which were clearly established at the time, and it was not on its face reasonable for

defendants to believe they could lawfully violate those rights. Accordingly, dismissing plaintiff's claims at this stage of the case based on qualified immunity is inappropriate. Again, this is an issue that may be reviewed at summary judgment after the completion of discovery.

## CONCLUSION

Defendants' motion to dismiss the amended complaint is GRANTED IN PART and DENIED IN PART.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion. (Doc. #43).

Dated: August 8, 2018
      White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge